UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WESTERN BANKERS CAPITAL, INC.,** | * | |
| | * | **CIVIL ACTION** |
| **Plaintiff,** | * | **NO.** |
| | * | |
| **VERSUS** | * | **SECTION " "** |
| | * | |
| **KIRTON MCCONKIE, P.C. and** | * | |
| **CHARLES PARKINSON LLOYD,** | * | **MAG. DIV.** |
| | * | |
| **Defendants.** | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Western Bankers Capital, Inc., which respectfully represents the following to this Honorable Court:

## NATURE OF THE ACTION

1. This action arises out of the negligent misconduct and breach of agreements and fiduciary duties by the law firm of Kirton McConkie, P.C. and attorney Charles Parkinson Lloyd (collectively, "Defendants") who were engaged to represent Plaintiff in connection with the sale of certain shares of stock. As a consequence of Defendants' actions, described in detail below, Plaintiff has suffered and will continue to suffer substantial damages.

2. Accordingly, Plaintiff asserts claims of breach of contract, professional negligence, and breach of fiduciary duty against, and seeks to recover compensatory and punitive damages from, these Defendants.

## PARTIES

3. Plaintiff, Western Bankers Capital, Inc., is a Delaware corporation having its principal place of business in River Ridge, Louisiana.

4. Defendant Kirton McConkie, P.C. ("Kirton McConkie") is a Utah professional corporation, a law firm, having its principal place of business in Salt Lake City, Utah.

5. Defendant Charles Parkinson Lloyd ("Lloyd") is an attorney residing in Salt Lake City, Utah and was, at all material times, a member and shareholder of Defendant Kirton McConkie.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this matter pursuant to 28 USC Sec. 1332, in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district under 28 U.S.C. Sec. 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana. Additionally, Plaintiff has its principal place of business in River Ridge, Louisiana, which is in the Eastern District of Louisiana.

8. Personal jurisdiction over Defendants is proper in this Court because Defendants, at all material times, knew Plaintiff's principal office and principal officer were located in Louisiana, sent their engagement agreement to Plaintiff's office in Louisiana, communicated with the company's principal officer in Louisiana, sent their invoice to the office in Louisiana, and received and accepted payment initiated in and sent from the office in Louisiana.

## FACTUAL BACKGROUND

9. On its website, Defendant Kirton McConkie claims to be Utah's "premier full-service law firm" with more than "160 award-winning attorneys" who can represent clients in a wide variety of matters, including securities and business transactions.

10. That same website states that Defendant Lloyd has been a licensed attorney in Utah since 1994, is a member of Defendant Kirton McConkie, and has experience and expertise in securities disclosures and securities law compliance, among other things.

11. In March 2017, a representative of Plaintiff contacted Defendant Lloyd about acting as Plaintiff's legal counsel about the sale of 26,000,000 shares of common stock Plaintiff owned (the "Shares") in Dolat Ventures, Inc., a Wyoming corporation (the "Company").

12. On March 31, 2017, Defendants emailed a "Legal Services Agreement" that was addressed to Plaintiff's principal at his office in River Ridge, Louisiana and by which they agreed to "provide legal opinions pursuant to the Securities Act of 1933 and pursuant to SEC Rule 144 relating to the removal of restrictive legends from securities" and "at all times act on your behalf to the best of our ability" and requested a retainer that was paid in full by Plaintiff.

13. Under the federal Securities Act of 1933, as amended (the "Securities Act"), and other applicable legal standards, an attorney is obligated to conduct in-depth due diligence and review all necessary documents and information when issuing a legal opinion related to the sale of securities in order to ensure that a proposed sale of stock is exempt from the requirements that stock for sale must generally be registered with the United States Securities and Exchange Commission ("SEC") in a formal registration statement.

14. On April 4, 2017, Defendants prepared and delivered a legal opinion letter to Interactive Brokers, LLC (the "Opinion Letter"), in which they represented that they conducted all required due diligence and concluded that the Shares could be sold by Plaintiff without violating SEC Rule 144, a safe harbor exemption from the SEC's registration requirements, specifically stating:

> Based on our review of the documents listed above, we are of the opinion that the 26,000,000 Shares are freely tradable; and that there is no restriction on the open market sale of the Shares. The Holder has represented and warranted that he has no other relationship with the Company other than the ownership of the Shares. We are not aware of any circumstances under state or federal securities laws that would prevent the Shareholder from selling her [sic] existing Shares of the Company's common stock in the open market.

15. Shortly after Defendants sent the Opinion Letter to the broker, Plaintiff sold its Shares in the Company, relying on the conclusion reached and representations made by Defendants in the Opinion Letter (the "Transaction").

16. Following the issuance of the Opinion Letter by Defendants, no further communication between Plaintiff and Defendants took place.

17. In or about 2018, the SEC began an investigation of the Transaction and, upon information and belief, issued a subpoena to Defendants and subsequently interviewed Defendant Lloyd about the Transaction.

18. In or about 2021, and in anticipation of the institution of legal enforcement proceedings by the SEC, Defendants submitted an Offer of Settlement to the SEC, in which they agreed to consent to the SEC's allegations regarding the Opinion Letter and Transaction and to certain relief and penalties sought by the SEC.

19. Defendants did not notify or consult with Plaintiff about the allegations being made by the SEC at any time prior to submitting the Offer of Settlement to the SEC.

20. Additionally, upon information and belief, Defendants provided to the SEC materials that were protected by the attorney-client privilege without notifying or giving Plaintiff any opportunity to object to such production.

21. On September 15, 2021, the SEC accepted Defendants' Offer of Settlement and publicly issued a Cease-and-Desist Order in "*In the Matter of Charles Parkinson Lloyd, Respondent*", Administrative Proceeding No. 3-20544 (the "Cease-and-Desist Order"), which, among other things, asserts that Defendant Lloyd drastically failed to comply with the rigorous due diligence obligations of an attorney writing a legal opinion letter that permits the use of an exemption to registration in violation of Section 5(c) of the Securities Act.

22. According to the Cease-and-Desist Order, Defendant Lloyd "consented to [its] entry," and the findings therein were "made pursuant to [Defendant Lloyd's] Offer of Settlement…"

23. On the same date the Cease-and-Desist Order was issued, September 15, 2021, the SEC also filed a Complaint against Plaintiff and others in the case of *SEC v. Simon Piers Thurlow, et al.*, in the United States District Court for the Southern District of New York, Case No. 1:21-cv-07700, which alleges, among other things, that the Transaction violated the Securities Act but is still pending without any finding of liability.

24. Defendants settled with the SEC and consented to the Cease-and-Desist Order without notifying or consulting with their client and without considering the effect on their client, the truth of the SEC's allegations, or the legitimacy of the Opinion Letter authored by Defendants; rather, Defendants put their interests ahead of their client's interests when they sought to extricate themselves from the SEC investigation and get the best deal possible.

25. Defendants' actions, as described above, were in direct contravention to the SEC's standards for securities attorneys, as well as the applicable standards for attorneys in Utah and the

Utah Rules of Professional Conduct ("URPC"), which provides the minimal standard of care with which a Utah attorney must comply.

26. Prior to September 15, 2021, Plaintiff had no knowledge that Defendants failed to conduct proper due diligence, that the Opinion Letter fell below relevant standards for securities attorneys and violated the Securities Act, or that Defendants would consent to the SEC's allegations and instead submitted an Offer of Settlement to the SEC to avoid more serious penalties for their own benefit.

27. As a direct and proximate result of Defendants' actions, as described above, Plaintiff has become subject to an unnecessary and unjust enforcement lawsuit by the SEC and must now defend itself against allegations related to Defendants' failure to comply with the Securities Act and SEC regulations, which allegations Defendants consented to in direct contravention to the interests of Plaintiff.

**FIRST CLAIM**
**(Breach of Contract)**

28. Defendants entered a written Legal Services Agreement with Plaintiff, under which Plaintiff paid fees to Defendants, and in return Defendants agreed to provide competent legal services, including conducting due diligence and issuing a well-founded opinion letter that they would defend against any challenges by third parties or the SEC, and to "at all times act on your behalf to the best of our ability."

29. By engaging in the conduct set forth above, Defendants breached their Legal Services Agreement with Plaintiff by, among other things: (1) issuing the Opinion Letter without conducting proper due diligence required by law; (2) failing to undertake a competent investigation to determine whether the Opinion Letter was valid and complied with the law after the SEC began

its investigation; (3) failing to notify Plaintiff that they were cooperating with the SEC and intended to submit an Offer of Settlement to the SEC; (4) failing to give Plaintiff any opportunity to object to the production of privileged materials; (5) failing to defend their own Opinion Letter during the SEC investigation; and/or (6) consenting to the SEC's assertion that the Opinion Letter violated the Securities Act.

30. As a result of Defendants' breach of the Legal Services Agreement, Plaintiff has been subject to an unnecessary and unjust civil litigation by the SEC that has severely affected its ability to conduct further business, causing it to incur significant damages which Plaintiff seeks to recover from Defendants.

## SECOND CLAIM
### (Professional Negligence)

31. At all material times, Defendants were the attorneys for Plaintiff in connection with the issuance of the Opinion Letter.

32. At all material times, Defendants owed a duty and standard of care to Plaintiff to exercise the skill and knowledge ordinarily possessed by attorneys under similar circumstances, to exercise a reasonable degree of care, skill, and dispatch in carrying out the obligations for which they were engaged.

33. For example, URPC Rule 1.1 Competence states:

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation, and, for licensed paralegal practitioners, a determination of whether a matter should be referred to a lawyer licensed to provide legal services without restrictions or limitations.

34. URPC Rule 1.3 Diligence provides, "A lawyer shall act with reasonable diligence and promptness in representing a client," and includes the following Comment:

7

> (1) A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.

35. Additionally, URPC Rule 1.9 Duties to Former Clients sets forth the obligations owed to a former client, stating in part:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (c)(1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or (c)(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

36. Defendants failed to exercise the degree of care, skill and diligence commonly possessed by a member of the legal community by, among other things: (1) issuing the Opinion Letter without conducting proper due diligence required by law; (2) failing to undertake a competent investigation to determine whether the Opinion Letter was valid and complied with the law after the SEC began its investigation; (3) failing to notify Plaintiff that they were cooperating with the SEC and intended to submit an Offer of Settlement to the SEC; (4) failing to give Plaintiff any opportunity to object to the production of privileged materials; (5) failing to defend their own Opinion Letter during the SEC investigation; and/or (6) consenting to the SEC's assertion that the Opinion Letter violated the Securities Act.

37. Absent Defendants' negligence, Plaintiff would not have sold the Shares and thereby avoided potential claims and liability sought by the SEC.

38. As a result of Defendants' negligence, Plaintiff also has been subject to an unnecessary and unjust civil litigation by the SEC that has severely affected its ability to conduct further business, causing it to incur significant damages.

39. Defendants' conduct was wanton, reckless, outrageous, and/or in willful disregard for the rights of Plaintiff, such that punitive damages should be imposed on Defendants.

40. As a result of their professional negligence, Plaintiff seeks compensatory and punitive damages against Defendants.

## THIRD CLAIM
### (Breach of Fiduciary Duties)

41. Defendants held themselves out to Plaintiff as professionals with particular expertise in securities matters, specifically including the sale of securities in compliance with the law, and were engaged as counsel based on their experience and expertise.

42. At all material times, Plaintiff was a client of Defendants.

43. Defendants owed fiduciary duties to Plaintiff, including without limitation a duty of loyalty, a duty of candor, a duty of fair dealing, a duty to avoid self-dealing, an affirmative duty to furnish information and disclose all material facts involving the sale of securities, and a duty to act solely in the interest of Plaintiff rather than their own self interests.

44. By engaging in the conduct set forth in the foregoing paragraphs, Defendants breached their fiduciary duties to Plaintiff by, among other things: (1) issuing the Opinion Letter without conducting proper due diligence required by law; (2) failing to undertake a competent investigation to determine whether the Opinion Letter was valid and complied with the law after the SEC began its investigation; (3) failing to notify Plaintiff that they were cooperating with the SEC and intended to submit an Offer of Settlement to the SEC; (4) failing to give Plaintiff any

opportunity to object to the production of privileged materials; (5) failing to defend their own Opinion Letter during the SEC investigation; and/or (6) consenting to the SEC's assertion that the Opinion Letter violated the Securities Act.

45. As a result of Defendants' breach of their fiduciary duties, Plaintiff has been subject to an unnecessary and unjust civil litigation by the SEC that has severely affected its ability to conduct further business, causing it to incur significant damages.

46. Defendants' conduct was wanton, reckless, outrageous, and/or in willful disregard for the rights of Plaintiff, such that punitive damages should be imposed on Defendants.

47. As a result of Defendants' breach of their fiduciary duties, Plaintiff seeks compensatory and punitive damages against Defendants.

## JURY DEMAND

48. Plaintiff hereby demands a trial by jury of all issues triable by a jury in the captioned matter.

**WHEREFORE**, Plaintiff, Western Bankers Capital, Inc., respectfully prays that, after all due proceedings, judgment be entered in its favor and against Defendant Kirton McConkie, P.C. and Defendant Charles Parkinson Lloyd, jointly and severally, in an amount to be determined at trial, plus an award of punitive damages, attorney's fees, costs, interest, and such other relief that the Court may deem appropriate.

Respectfully submitted,

_____
**ANDREW L. KRAMER (La. Bar # 23817)**
201 St. Charles Avenue, Suite 2504
New Orleans, Louisiana 70170
Telephone:    (504) 599-5623
Facsimile:    (866) 667-3890
Email: akramer@kramerllc.com

**Counsel for Plaintiff**