UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WESTERN BANKERS CAPITAL, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-5124** |
| **KIRTON MCCONKIE, P.C., ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court in this legal-malpractice case is the opposed motion[1] of Defendants Kirton McConkie, P.C. and Charles Parkinson Lloyd to disqualify Plaintiff Western Bankers Capital, Inc.'s *pro hac vice*-admitted counsel Roger Fidler under lawyer–witness ethics rules. *See* LA. R. PROF'L CONDUCT 3.7(a); MODEL R. PROF'L CONDUCT 3.7(a). Considering the posture of this case—before discovery has been exchanged, before witness and exhibit lists have been filed, before a scheduling order has issued, and before issue has even been joined—Kirton McConkie and Lloyd have not carried their burden to show that the Court should disqualify Fidler under the relevant lawyer–witness ethics rules. Specifically, at this early stage, and on the limited pre-discovery record before the Court, Kirton McConkie and Lloyd have not convinced the Court that Fidler will likely be a *necessary* witness at any eventual *trial* of the case. Accordingly, for these reasons and those that follow, Kirton McConkie and Lloyd's motion to disqualify Fidler is **DENIED** without prejudice to the right to re-urge disqualification if further factual and legal development confirms that Fidler's trial testimony will be relevant, material, and unobtainable elsewhere.

---

[1] ECF No. 10.

## I.  BACKGROUND

This legal-malpractice action arises from the representation of Western Bankers Capital by Utah law firm Kirton McConkie, P.C., and one of its attorneys, Charles Parkinson Lloyd, in connection with the sale of certain shares of stock.[2] Because this case comes to the Court in the pre-answer stage, the facts that follow are drawn primarily from the allegations of Western Bankers Capital's complaint.

At the core of this case is an April 2017 opinion letter Kirton McConkie and Lloyd drafted to advise a broker about the sale of shares of common stock that Western Bankers Capital owned in Dolat Ventures, Inc. ("DOLV").[3] Western Bankers Capital alleges that, in that opinion letter, Kirton McConkie and Lloyd represented that Kirton McConkie and Lloyd "conducted all required due diligence" and opined that Western Bankers Capital could sell the DOLV stock without violating Securities and Exchange Commission ("SEC") Rule 144, a safe-harbor exemption from SEC registration requirements.[4] Western Bankers Capital alleges that it sold the DOLV stock in reliance on Kirton McConkie and Lloyd's opinion letter.[5]

After Western Bankers Capital sold the DOLV stock in reliance on the opinion letter, in 2018, the SEC began investigating the transaction.[6] According to the complaint, the SEC later issued a subpoena to Kirton McConkie and Lloyd and interviewed Lloyd about the transaction.[7] Western Bankers Capital alleges that

---

[2] *See generally* ECF No. 1.
[3] *Id.* at ¶¶ 11, 14.
[4] *Id.* at ¶ 14.
[5] *Id.* at ¶ 15.
[6] *Id.* at ¶ 17.
[7] *Id.* at ¶ 17.

2

Kirton McConkie and Lloyd eventually submitted an offer of settlement to the SEC "[i]n or about 2021."[8] According to the complaint, Kirton McConkie's and Lloyd's offer of settlement consented to the SEC's allegations and to certain relief and penalties—without notifying Western Bankers Capital about the SEC's allegations.[9] Western Bankers Capital adds that, in connection with the investigation, Kirton McConkie and Lloyd gave the SEC attorney-client privileged materials without notifying Western Bankers Capital or giving Western Bankers Capital a chance to object.[10]

According to the complaint, the SEC accepted Kirton McConkie and Lloyd's offer of settlement in September 2021 and issued a public cease-and-desist order.[11] Western Bankers Capital alleges that the SEC cease-and-desist order asserts that Lloyd "drastically failed to comply with the rigorous due diligence obligations of an attorney writing a legal opinion letter that permits the use of an exemption to registration in violation of Section 5(c) of the Securities Act."[12] According to the complaint, the cease-and-desist order says that Lloyd "consented to [its] entry" and that its findings were "made pursuant to" Lloyd's offer of settlement with the SEC.[13]

---

[8] *Id.* at ¶ 18.
[9] *Id.* at ¶¶ 18–19.
[10] *Id.* at ¶ 20.
[11] *Id.* at ¶ 21.
[12] *Id.*
[13] *Id.* at ¶ 22 (internal quotation marks omitted).

According to the complaint, Kirton McConkie and Lloyd settled with the SEC and consented to the SEC's September 2021 cease-and-desist order without notifying or consulting Western Bankers Capital.[14] Western Bankers Capital alleges that Kirton McConkie and Lloyd settled with the SEC "without considering the effect [of the settlement and cease-and-desist order] on [Western Bankers Capital], the truth of the SEC's allegations, or the legitimacy of the [o]pinion [l]etter authored by [Kirton McConkie and Lloyd] . . . ." Instead, Kirton McConkie and Lloyd allegedly "put their interests ahead of [Western Banker's Capital's] interests when they sought to extricate themselves from the SEC investigation and get the best deal possible."[15]

Western Bankers Capital alleges that, on the same day the SEC cease-and-desist order issued, the SEC brought an enforcement action against it and others in the United States District Court for the Southern District of New York.[16] *See* Complaint, *SEC v. Thurlow*, No. 1:21-CV-7700 (Sept. 25, 2021), ECF No. 1. According to the complaint, the SEC's enforcement action against Western Bankers Capital and others alleges that the DOLV stock-share transaction violated the Securities Act.[17]

Western Bankers Capital alleges that Kirton McConkie and Lloyd's actions led to what it describes as an "unnecessary and unjust enforcement lawsuit."[18] As a result, according to the complaint, Western Bankers Capital "must now defend itself against allegations related to [Kirton McConkie's and Lloyd's] failure to comply with

---

[14] *Id.* at ¶ 24.
[15] *Id*
[16] *Id.* at ¶ 23.
[17] *Id.*
[18] *Id.* at ¶ 27.

the Securities Act and SEC regulations"—allegations Kirton McConkie and Lloyd "consented to in direct contravention to the interests of" Western Bankers Capital.[19]

Invoking the Court's diversity jurisdiction, 28 U.S.C. § 1332(a)(1), Western Bankers Capital sued Kirton McConkie and Lloyd in this Court in September 2023, just under two years after the SEC brought the enforcement action.[20] Against both Kirton McConkie and Lloyd, Western Bankers Capital asserts claims for (1) breach of contract, (2) professional negligence, and (3) breach of fiduciary duty. More specifically, Western Bankers Capital alleges that Kirton McConkie and Lloyd are liable on those claims because they breached a "Legal Services Agreement," breached fiduciary duties, and committed professional negligence in at least these six respects:

> (1) issuing the Opinion Letter without conducting proper due diligence required by law; (2) failing to undertake a competent investigation to determine whether the Opinion Letter was valid and complied with the law after the SEC began its investigation; (3) failing to notify [Western Bankers Capital] that [Kirton McConkie and Lloyd] were cooperating with the SEC and intended to submit an Offer of Settlement to the SEC; (4) failing to give [Western Bankers Capital] any opportunity to object to the production of privileged materials; (5) failing to defend [Kirton McConkie and Lloyd's] own Opinion Letter during the SEC investigation; and/or (6) consenting to the SEC's assertion that the Opinion Letter violated the Securities Act.[21]

A few weeks after Western Bankers Capital sued, it moved for the *pro hac vice* admission of attorney Roger L. Fidler.[22] Another section of this Court granted the motion and admitted Fidler *pro hac vice* as counsel for Western Bankers Capital.[23]

---

[19] *Id.*
[20] *Id.* at ¶ 6.
[21] *Id.* at ¶¶ 28–29, 36, 44.
[22] ECF No. 4.
[23] ECF No. 5 at 1.

Now, Kirton McConkie and Lloyd move the Court to disqualify Fidler as counsel under lawyer–witness ethics rules.[24] Kirton McConkie and Lloyd assert that Fidler "will be a necessary witness at trial" because the SEC has charged Fidler with fraud and illegally offering unregistered securities in connection with transactions that they say "are at the very center" of this case.[25] Kirton McConkie and Lloyd point out that Fidler is a named defendant in the SEC's September 2021 enforcement action against Western Bankers Capital and others.[26] In that enforcement action, the SEC alleges "a fraudulent scheme . . . to enrich" Fidler, Western Bankers Capital, and the other five named defendants "through the unlawful offering of" DOLV securities.[27] The SEC alleges a scheme that involved converting debt into DOLV shares and then manipulating documents and making false representations for the purpose of persuading attorneys, including Lloyd, to opine that the DOLV shares could be sold without restriction.[28] The SEC alleges that those opinion letters were in turn used to persuade brokers to remove internal restrictions on the sale of DOLV shares.[29]

Western Bankers Capital opposes disqualification.[30] It contends that Kirton McConkie and Lloyd have not shown that Fidler should be disqualified under the relevant lawyer-witness ethics rules.[31] In support, it attaches a declaration in which Fidler attests that he did not represent Western Bankers Capital when Western

---

[24] ECF No. 10.
[25] ECF No. 10-1 at 1.
[26] ECF No. 10-3 at 6 ¶ 14.
[27] ECF No. 10-3 at 1 ¶1.
[28] *Id.* at ¶¶ 1–7, 54–65.
[29] *Id.* at ¶¶ 5–6, 53, 62.
[30] ECF No. 17.
[31] *Id.* at 1.

6

Bankers Capital hired Lloyd and Kirton McConkie to offer an opinion in connection with Western Bankers Capital's sale of shares of DOLV stock; that Fidler "was not involved in the engagement of [Lloyd or Kirton McConkie] or their preparation and issuance of the Opinion Letter"; and that neither Lloyd nor anyone else at Kirton McConkie "ever sought information" from Fidler since the SEC investigation.[32]

## II.   ANALYSIS

Kirton McConkie and Lloyd's motion to disqualify is a "substantive motion[ ] affecting the rights of the parties and [is] determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). In evaluating the motion, the Court "first look[s] to 'the local rules promulgated by the [Court] itself.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). This Court's Local Civil Rules adopt the Rules of Professional Conduct of the Louisiana State Bar Association ("Louisiana Rules"). *See* LOCAL CIVIL RULE 83.2.3. Besides the Louisiana Rules and the Local Civil Rules, the Court "also considers the motion governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *In re ProEducation Int'l, Inc.*, 587 F.3d at 299 (internal quotation, citation, and alterations omitted). "The Fifth Circuit has recognized the ABA Model Rules of Professional Conduct ('Model Rules') as the national standards to consider in reviewing motions to disqualify." *Id.* (citation omitted). The Court thus considers both the Louisiana Rules and the Model Rules in its analysis. *See id.*

---

[32] ECF No. 17-1 at ¶¶ 3–6.

7

The lawyer–witness rules under the Louisiana Rules and the Model Rules are essentially identical. *Compare* LA. R. PROF'L CONDUCT 3.7(a) *with* MODEL R. PROF'L CONDUCT 3.7(a). Subject to exceptions not relevant here and now, both sets of lawyer–witness rules bar a lawyer from "act[ing] as advocate *at a trial* in which the lawyer is likely to be a *necessary* witness." LA. R. PROF'L CONDUCT 3.7(a) (emphasis added); *see also* MODEL R. PROF'L CONDUCT 3.7(a). A witness is "necessary" if his testimony is "relevant, material, and unobtainable elsewhere." *Treece v. Perrier Condo. Owners Assoc., Inc.*, 559 F. Supp. 3d 530, 536 (E.D. La. 2021) (Morgan, J.) (internal quotation and citation omitted). As movants here, Kirton McConkie and Lloyd have the burden to show that Fidler should be disqualified under these lawyer–witness rules. *See id.*

Kirton McConkie and Lloyd have not carried their burden to persuade the Court to impose the "harsh and disruptive remedy" of disqualifying Fidler for violating lawyer–witness ethics rules at this early stage of the case. *Id.* at 535. No discovery has apparently been conducted; no scheduling order has issued; no witness or exhibit lists have been filed; Kirton McConkie and Lloyd have not answered; and a Rule 12(b)(6) motion to dismiss the complaint—in its entirety— remains pending.[33] It follows that the Court cannot now know which (if any) of Western Bankers Capital's three claims will be tried or what Kirton McConkie's and Lloyd's defenses will be.[34]

---

[33] *See* Docket, *Western Bankers Capital, Inc. v. Kirton McConkie, PC*, No. 23-CV-5124 (E.D. La.) (Feb. 18, 2025).

[34] The Court does not now address the argument that Fidler "may" have an unwaivable conflict of interest with Western Bankers Capital because Kirton McConkie and Lloyd raised that argument for the first time in their reply brief. *See* ECF No. 20 at 2–3 (alterations omitted); *accord Jones v. Gusman*, 515 F. Supp. 3d 520, 540 (E.D. La. 2021) (Africk, J.) (collecting cases).

8

On the limited record before it, then, the Court cannot now conclude that Fidler "is likely to be a *necessary* witness" "at a *trial*" of this case. LA. R. PROF'L CONDUCT 3.7(a) (emphasis added); *see also* MODEL R. PROF'L CONDUCT 3.7(a). Considering just one of the three criterion for qualifying as a "necessary witness," the Court finds that Kirton McConkie and Lloyd have not carried their burden to show that Fidler's potential trial testimony is "unobtainable elsewhere." *Treece*, 559 F. Supp. 3d at 536 (internal quotation and citation omitted). Kirton McConkie and Lloyd's opening brief concludes—without elaboration—that Fidler's trial testimony is "unobtainable elsewhere."[35] But Western Bankers Capital's response reasons that Fidler's testimony is not "unobtainable elsewhere" because "several other witnesses"—including Lloyd and five individual defendants other than Fidler named in the SEC enforcement action—can offer the same testimony about the DOLV stock sale and opinion letter that form the basis of Western Bankers Capital's claims.[36] In reply, Kirton McConkie and Lloyd do not rebut Western Bankers Capital's argument or otherwise explain how Fidler's trial testimony is, in fact, "unobtainable elsewhere."[37]

---

[35] ECF No. 10-1 at 9.
[36] ECF No. 17 at 6.
[37] *See generally* ECF No. 20.

9

Accordingly, because Kirton McConkie and Lloyd have not shown that Fidler's trial testimony is "unobtainable elsewhere," they have not shown that Fidler is likely to be a "necessary witness" at trial. Kirton McConkie and Lloyd have therefore failed to carry their burden to show that the Court should disqualify Fidler for violating lawyer–witness ethics rules at this early stage of the case.[38]

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Kirton McConkie and Lloyd's opposed motion[39] to disqualify Fidler as counsel is **DENIED** without prejudice to the right to re-urge a motion to disqualify Fidler if further factual and legal development confirms that Fidler's trial testimony will be relevant, material, and unobtainable elsewhere.

New Orleans, Louisiana, this 18th day of February, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[38] *Accord, e.g.*, *Johnson v. NAACP*, 17-CV-357, 2017 WL 2425915, at (E.D. La. June 6, 2017) (Barbier, J.) (denying motion to disqualify counsel filed in "the infancy of the litigation," before the discovery and motion deadlines had expired, but expressing a willingness to revisit disqualification "[s]hould it become clear that [counsel] is a necessary witness"); *CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-CV-6623, 2010 WL 2773116, at *2–3 (E.D. La. 2010) (Africk, J.) (denying without prejudice a motion to disqualify counsel filed during pretrial proceedings).
[39] ECF No. 10.