UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WESTERN BANKERS CAPITAL, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-5124** |
| **KIRTON MCCONKIE, P.C., ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court in this legal-malpractice action is the motion[1] of Defendants Kirton McConkie, P.C. and Charles Parkinson Lloyd to dismiss Plaintiff Western Bankers Capital, Inc.'s complaint under Federal Rule of Civil Procedure 12(b)(6). Kirton McConkie and Lloyd have not shown that the complaint's well-pleaded factual allegations—taken as true, with all reasonable inferences drawn in Western Bankers Capital's favor—fail to state plausible Utah-law claims for legal malpractice under breach-of-contract, breach-of-fiduciary-duty, and negligence theories. Accordingly, for these reasons and those that follow, the Rule 12(b)(6) motion to dismiss is **DENIED**.

## I. BACKGROUND

This legal-malpractice action arises from the representation of Western Bankers Capital by Utah law firm Kirton McConkie, P.C., and one of its attorneys, Charles Parkinson Lloyd, in connection with the sale of certain shares of stock.[2] Because this case comes to the Court on a Rule 12(b)(6) motion, the facts that follow are drawn primarily from the allegations of Western Bankers Capital's complaint.

---

[1] ECF No. 11.
[2] *See generally* ECF No. 1.

At the core of this case is an April 2017 opinion letter (the "Opinion Letter") that Kirton McConkie and Lloyd drafted to advise a broker about the sale of shares of common stock that Western Bankers Capital owned in Dolat Ventures, Inc. ("DOLV").[3] Western Bankers Capital alleges that, in the Opinion Letter, Kirton McConkie and Lloyd represented that they had "conducted all required due diligence" and opined that Western Bankers Capital could sell the DOLV stock without violating Securities and Exchange Commission ("SEC") Rule 144, a safe-harbor exemption from SEC registration requirements.[4] Western Bankers Capital alleges that it in turn sold the DOLV stock in reliance on the Opinion Letter.[5]

After Western Bankers Capital sold the DOLV stock in reliance on the Opinion Letter, in 2018, the SEC began investigating the transaction.[6] According to the complaint, the SEC later issued a subpoena to Kirton McConkie and Lloyd and interviewed Lloyd about the transaction.[7] Western Bankers Capital alleges that Kirton McConkie and Lloyd eventually submitted an offer of settlement (the "Offer of Settlement") to the SEC "[i]n or about 2021."[8] According to the complaint, the Offer of Settlement consented to the SEC's allegations and to certain relief and penalties—without even notifying Western Bankers Capital about the allegations.[9] Western Bankers Capital adds that, in connection with the investigation, Kirton McConkie

---

[3] *Id.* at ¶¶ 11, 14.
[4] *Id.* at ¶ 14.
[5] *Id.* at ¶ 15.
[6] *Id.* at ¶ 17.
[7] *Id.* at ¶ 17.
[8] *Id.* at ¶ 18.
[9] *Id.* at ¶¶ 18–19.

and Lloyd gave the SEC attorney-client privileged materials without notifying Western Bankers Capital or giving Western Bankers Capital a chance to object.[10]

According to the complaint, the SEC accepted the Offer of Settlement in September 2021 and issued a public cease and desist order (the "Cease and Desist Order").[11] Western Bankers Capital alleges that the Cease and Desist Order asserts that Lloyd "drastically failed to comply with the rigorous due diligence obligations of an attorney writing a legal opinion letter that permits the use of an exemption to registration in violation of Section 5(c) of the Securities Act."[12] According to the complaint, the Cease and Desist Order says that Lloyd "consented to [its] entry" and that its findings were "made pursuant to" Lloyd's Offer of Settlement.[13]

Western Bankers Capital alleges that Kirton McConkie and Lloyd settled with the SEC and consented to the SEC's September 2021 Cease and Desist Order without notifying or consulting Western Bankers Capital.[14] According to the complaint, Kirton McConkie and Lloyd settled with the SEC "without considering the effect [of the Offer of Settlement and Cease and Desist Order] on [Western Bankers Capital], the truth of the SEC's allegations, or the legitimacy of the Opinion Letter authored by [Kirton McConkie and Lloyd] . . . ." Instead, Kirton McConkie and Lloyd allegedly "put their interests ahead of [Western Bankers Capital's] interests when they sought to extricate themselves from the SEC investigation and get the best deal possible."[15]

---

[10] *Id.* at ¶ 20.
[11] *Id.* at ¶ 21.
[12] *Id.*
[13] *Id.* at ¶ 22 (internal quotation marks omitted).
[14] *Id.* at ¶ 24.
[15] *Id.*

3

Western Bankers Capital alleges that, on the same day the Cease and Desist Order issued, the SEC brought an enforcement action against it and others in the United States District Court for the Southern District of New York.[16] *See* Complaint, *SEC v. Thurlow*, No. 1:21-CV-7700 (Sept. 25, 2021), ECF No. 1. According to the complaint, the SEC's enforcement action against Western Bankers Capital and others alleges that the DOLV stock-share transaction violated the Securities Act.[17]

Western Bankers Capital alleges that Kirton McConkie and Lloyd's actions led to an "unnecessary and unjust enforcement lawsuit."[18] As a result, according to the complaint, Western Bankers Capital "must now defend itself against allegations related to [Kirton McConkie's and Lloyd's] failure to comply with the Securities Act and SEC regulations"—allegations that Kirton McConkie and Lloyd allegedly "consented to in direct contravention to the interests of" Western Bankers Capital.[19]

Invoking the Court's diversity jurisdiction, 28 U.S.C. § 1332(a)(1), Western Bankers Capital sued Kirton McConkie and Lloyd in this Court in September 2023, just under two years after the SEC brought the enforcement action.[20] Against both Kirton McConkie and Lloyd, Western Bankers Capital asserts claims for (1) breach of contract, (2) professional negligence, and (3) breach of fiduciary duty. More specifically, Western Bankers Capital alleges that Kirton McConkie and Lloyd are

---

[16] *Id.* at ¶ 23.
[17] *Id.*
[18] *Id.* at ¶ 27.
[19] *Id.*
[20] *Id.* at ¶ 6.

4

liable on those claims because they breached a "Legal Services Agreement," breached fiduciary duties, and committed professional negligence in at least these six respects:

> (1) issuing the Opinion Letter without conducting proper due diligence required by law; (2) failing to undertake a competent investigation to determine whether the Opinion Letter was valid and complied with the law after the SEC began its investigation; (3) failing to notify [Western Bankers Capital] that [Kirton McConkie and Lloyd] were cooperating with the SEC and intended to submit an Offer of Settlement to the SEC; (4) failing to give [Western Bankers Capital] any opportunity to object to the production of privileged materials; (5) failing to defend [Kirton McConkie and Lloyd's] own Opinion Letter during the SEC investigation; and/or (6) consenting to the SEC's assertion that the Opinion Letter violated the Securities Act.[21]

Now, Kirton McConkie and Lloyd move the Court to dismiss Western Bankers Capital's complaint under Rule 12(b)(6).[22] Western Bankers Capital opposes.[23]

## II.  LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at

---
[21] *Id.* at ¶¶ 28–29, 36, 44.
[22] ECF No. 11.
[23] ECF No. 18.

5

555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.  ANALYSIS

Kirton McConkie and Lloyd contend that the Court should dismiss Western Bankers Capital's complaint with prejudice under Rule 12(b)(6) because it fails to state any plausible legal-malpractice claims against them under negligence, breach-of-fiduciary-duty, and breach-of-contract theories.[24] Western Bankers Capital counters that the Court should deny the motion because it improperly relies on evidence outside the complaint and improperly raises sufficiency-of-evidence arguments the Court may not resolve at the Rule 12(b)(6) stage.[25] Because Kirton McConkie and Lloyd's motion-to-dismiss briefing assumes that Utah law governs

---

[24] ECF No. 11-1 at 1–17.
[25] ECF No. 18 at 1–12.

Western Bankers Capital's legal-malpractice claims, and because Western Bankers Capital's opposition brief does not contest the application of Utah law to those claims, the Court applies Utah substantive law in its analysis of the Rule 12(b)(6) motion.

"Legal malpractice is a general term used to describe a lawyer's wrongful action or omission that causes injury to a client." *Christensen & Jensen, P.C. v. Barrett & Daines*, 194 P.3d 931, 937 (Utah 2008). A legal-malpractice claim "may be framed conceptually as either a tort or a breach of contract." *Id.* (quotation and citations omitted). A legal-malpractice plaintiff "may sue for damages based on breach of contract, breach of fiduciary duty, or negligence." *Id.* (citation omitted).

The elements of Western Bankers Capital's legal-malpractice claims under breach-of-fiduciary-duty and negligence theories are "substantially the same." *Id.* at 938. So Western Bankers Capital's "choice to classify its malpractice claim under one of [those] two theories does not cause any difference in result." *Gregory & Swapp, PLLC v. Kranendonk*, 424 P.3d 897, 904 (Utah 2018) (quotation and citation omitted). The elements of Western Bankers Capital's negligence-based malpractice claim are "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of the duty and the resulting injury to the client; and (v) actual damages." *Hartline v. Barker*, 912 P.2d 433, 439 (Utah 1996). And the elements of Western Bankers Capital's breach-of-fiduciary-duty-based malpractice claim are "(1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client;

7

(3) causation, both actual and proximate; and (4) damages suffered by the client." *Christensen & Jensen, P.C.*, 194 P.3d at 938 (quotation and citation omitted).

Western Bankers Capital's contract-based malpractice claim is "very different" from its two other malpractice claims. *Id.* A contract-based malpractice claim "deals directly with the attorney's breach of a specified term in a contract between the attorney and the client, within the scope of the attorney-client relationship, that causes the client to suffer damages." *Id.* The elements of Western Bankers Capital's contract-based claim are "(1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the express promise by the defendant; and (4) damages to the plaintiff resulting from the breach." *Id.* (quotation and citation omitted).

Citing these elements, Kirton McConkie and Lloyd first contend that Western Bankers Capital fails to state any plausible legal-malpractice claims against them on any theory arising from the Opinion Letter.[26] They reason that Western Bankers Capital warranted the accuracy of all the facts it gave Kirton McConkie in connection with the preparation of the Opinion Letter.[27] That warranty argument in turn rests on a "Representation Letter" that is attached to the motion to dismiss but is not attached to or referenced in the complaint.[28] In that Representation Letter, Western Bankers Capital "represents and warrants" to Kirton McConkie the truthfulness of certain facts related to the DOLV stock sale for which the Opinion Letter issued.[29]

---

[26] ECF No. 11-1 at 11–13.
[27] *Id.*
[28] *Id.*; *see also* ECF No. 11-4.
[29] ECF No. 11-4 at 1.

8

The Court may not dismiss Western Bankers Capital's claims arising from the Opinion Letter based on that warranty argument and the contents of the Representation Letter at this Rule 12(b)(6) stage. "[A] Rule 12(b)(6) motion typically cannot rely on evidence outside the complaint." *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016). But that general rule is subject to two exceptions: The Court "may rely on evidence outside the complaint, without converting a Rule 12(b)(6) motion into a motion for summary judgment, if that evidence is either (a) a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)). "But going beyond the pleadings is otherwise error." *Id.* (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)).

Neither of those two exceptions applies here. No party asks the Court to take judicial notice of the contents of the Representation Letter. And the Representation Letter is not "referred to" in Western Bankers Capital's complaint. *Id.* So the Court may not rely on the Representation Letter to resolve the Rule 12(b)(6) motion.

Contending otherwise, Kirton McConkie and Lloyd insist that the Court may consider the Representation Letter in the Rule 12(b)(6) analysis because it is "referenced in and made a part of the Opinion Letter," and the Opinion Letter is in turn referenced in the complaint.[30] The Court is not persuaded. It is true that the

---

[30] ECF No. 19 at 3.

Opinion Letter is referenced in the complaint, but it is not clear on this record that the Representation Letter "is a part of the Opinion Letter," as Kirton McConkie and Lloyd contend.[31] The Representation Letter appears in the record as a stand-alone document,[32] and there is no language in the Opinion Letter that specifically incorporates or adopts the Representation Letter or that otherwise confirms that the Representation Letter is, in fact, "a part of" the Opinion Letter.[33] The Opinion Letter merely lists the Representation Letter as one of the documents that Kirton McConkie and Lloyd "reviewed" "[i]n connection with the preparation of" the Opinion Letter.[34]

Accordingly, because Western Bankers Capital does not refer to the Representation Letter in its complaint, the Court may not consider the Representation Letter in its Rule 12(b)(6) analysis. *Accord, e.g.*, *Rollerson v. Brazos River Harbor Navigation Dist. of Brazoria Cnty.*, 6 F.4th 633, 639 n.3 (5th Cir. 2021) (reasoning that the exception to the general rule against considering evidence outside the complaint at the Rule 12(b)(6) stage did not apply to allow consideration of certain documents because the plaintiff did not refer to those documents in his complaint).[35]

Next, Kirton McConkie and Lloyd lodge a fact-based argument: They contend that Western Bankers Capital fails to state any plausible malpractice claims against

---

[31] *Id.*
[32] *See generally* ECF No. 11-4.
[33] *See generally* ECF No. 11-3.
[34] *Id.* at 2.
[35] In an argument relegated to a footnote in their reply brief, Kirton McConkie and Lloyd contend that the Opinion Letter shows that they "never were asked and never agreed to conduct an independent investigation into any of the facts, but accepted them as warranted by [Western Bankers Capital]." ECF No. 19 at 3 n.1. The Court does not consider this argument because it is inadequately briefed and therefore forfeited. *See, e.g.*, *Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023) (Courts "have repeatedly cautioned that arguments appearing only in footnotes are insufficiently addressed in the body of the brief and thus forfeited." (quotation and citations omitted)).

them based on their alleged consent to the SEC's assertion that the Opinion Letter violated the Securities Act because the complaint's factual allegation on that topic is simply untrue.[36] The relevant allegation is that Lloyd "consent[ed] to the SEC's assertion that the Opinion Letter violated the Securities Act."[37] Invoking the text of the Offer of Settlement and the Cease and Desist Order,[38] Kirton McConkie and Lloyd contend that "nowhere" in either document did Lloyd "consent or agree that the Opinion Letter violated the law."[39] Instead, they submit, both documents "make plain that they were entered without admitting or denying" the SEC's findings.[40] Western Bankers Capital rejoins that, in the Offer of Settlement, Lloyd "expressly admits" violating the Securities Act and "unequivocally agrees that he can no longer deny any of the factual findings" in the Cease and Desist Order.[41] Western Bankers Capital thus reasons that it was "direct[ly] harmed" by the Offer of Settlement—regardless of whether Lloyd formally admitted the findings of the Cease and Desist Order.[42]

Western Bankers Capital has the better argument, considering the pro-plaintiff standard of review the Court must apply at this Rule 12(b)(6) stage. That review requires the Court to resolve in Western Bankers Capital's favor "[a]ll questions of fact," *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024) (quotation and citation omitted), and all "doubts as to the sufficiency of the claim." *Dupart v.*

---

[36] ECF No. 11-1 at 13.
[37] ECF No. 1 at ¶¶ 30, 36, 44.
[38] Western Bankers Capital does not object to the Court's consideration of the Offer of Settlement and the Cease and Desist Order. ECF No. 18. Nor could it. Both documents are attached to the motion to dismiss, referenced in the complaint, and central to Western Bankers Capital's claims.
[39] *Id.*
[40] *Id.* (quotation and citations omitted).
[41] ECF No. 18 at 9.
[42] *Id.*

11

*Roussell*, 497 F. Supp. 3d 102, 110 (E.D. La. 2020) (Vance, J.) (citation omitted). On the one hand, the Offer of Settlement and the Cease and Desist Order reflect that Lloyd did not "admit[ ] or deny[ ] the findings" of the Cease and Desist Order.[43] On the other hand, those same documents confirm that Lloyd "consent[ed] to the entry" of the Cease and Desist Order—which itself concludes that Lloyd violated the Securities Act in connection with the preparation and issuance of the Opinion Letter.[44] Resolving in Western Bankers Capital's favor all factual disputes and all doubts as to the sufficiency of the claim, the Court can plausibly infer that Lloyd "harmed" Western Bankers Capital when—against his client's alleged wishes—Lloyd allegedly consented to the entry of the Cease and Desist Order that concludes that Lloyd violated the Securities Act in connection with the preparation and issuance of the Opinion Letter. Accordingly, on this record and briefing, the Court declines to dismiss Western Bankers Capital's legal-malpractice claims based on the fact-based argument that, *contra* the complaint, Lloyd did not consent to the SEC's assertion that the Opinion Letter violated the Securities Act.

Finally, Kirton McConkie and Lloyd contend that Western Bankers Capital fails to state any claims against them arising from their alleged cooperation with the SEC's investigation into the DOLV stock-sale transaction.[45] They submit that they no longer represented Western Bankers Capital when the SEC contacted them in 2018, and that their cooperation with the SEC cannot constitute a breach of any

---

[43] ECF No. 11-6 at 3 ¶ VII(B); ECF No. 11-7 at 1 ¶ II.
[44] ECF No. 11-7 at 5 ¶¶ 17-18, 6 ¶¶ 26–27.
[45] ECF No. 11-1 at 13–17.

12

duties they owed to Western Bankers Capital—as a former client—because the Utah Rules of Professional Conduct permitted or affirmatively required them to cooperate with the SEC.[46] Western Bankers Capital counters that the attorney-client relationship had not ended when the SEC came calling in 2018, and that even if it had, Kirton McConkie and Lloyd still fail to show that the cited Utah Rules of Professional Conduct apply on the limited pre-discovery record before the Court.[47]

Western Bankers Capital's latter argument is persuasive. Even if the Court assumes that Western Bankers Capital was merely a former client, the Court may not dismiss any of Western Bankers Capital's claims at this Rule 12(b)(6) stage based on the cited Utah Rules of Professional Conduct. That is because the Court is unable to ascertain—without any discovery—whether those rules in fact permitted or required Kirton McConkie's and Lloyd's cooperation with the SEC. For example, Kirton McConkie and Lloyd's argument relies on Utah Rule of Professional Conduct 1.6(b), but that rule only allows a lawyer to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary" to achieve certain specified objectives. UTAH R. PROF'L CONDUCT 1.6(b). Viewing only the allegations of the complaint, the Court cannot definitively discern whether Lloyd revealed information to the SEC "to the extent [Lloyd] reasonably believe[d] necessary" to achieve any of the objectives specified in the rule. *Id.* It follows that the

---

[46] *Id.*
[47] ECF No. 18 at 9–12.

Court cannot conclude, in its limited Rule 12(b)(6) review, that Rule 1.6(b) permitted or affirmatively required Kirton McConkie and Lloyd's cooperation with the SEC.[48]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Kirton McConkie and Lloyd's Rule 12(b)(6) motion[49] to dismiss Western Bankers Capital's complaint is **DENIED**.

New Orleans, Louisiana, this 20th day of February, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[48] For essentially the same reasons, the Court may not dismiss Western Bankers Capital's SEC-cooperation-based malpractice claims at this Rule 12(b)(6) stage based on the application of Utah Rules of Professional Conduct 1.2(d) and 4.1. Rule 1.2(d) forbids a lawyer from helping a client engage "in conduct that the lawyer knows is criminal or fraudulent." UTAH R. PROF'L CONDUCT 1.2(d). Rule 4.1 forbids a lawyer from knowingly "[m]aking a false statement of material fact or law to a third person" or "fail[ing] to disclose a material fact, when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6." UTAH R. PROF'L CONDUCT 4.1. Viewing only the well-pleaded allegations of the complaint, the Court cannot definitively determine that Rules 1.2(d) and 4.1 applied to require Kirton McConkie and Lloyd to cooperate with the SEC investigation, against Western Bankers Capital's alleged wishes.

[49] ECF No. 11.