UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WESTERN BANKERS CAPITAL, INC.**            CIVIL ACTION

**VERSUS**                                    NO. 23-5124

**KIRTON MCCONKIE, P.C. ET AL.**              SECTION "O"

ORDER AND REASONS

Before the Court is a motion[1] to dismiss the Third-Party Demand filed by Third-Party Defendants Joseph D. Jordan, Roger Leon Fidler, Simon Piers Thurlow, and Richard Oravec. Third-Party Defendants Fidler, Thurlow, and Oravec seek to dismiss Third-Party Plaintiffs Kirton McConkie, P.C.'s and Charles Lloyd's claim against them for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Further, all Third-Party Defendants seek to dismiss Kirton and Lloyd's Third-Party Demand for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the Court **DENIES** the motion.

## I.    BACKGROUND

This legal-malpractice action arises from the representation of Plaintiff Western Bankers Capital ("WBC" or "Plaintiff") by Utah law firm Kirton McConkie, P.C. ("Kirton McConkie"), and one of its attorneys, Charles Parkinson Lloyd ("Lloyd"), in connection with the sale of certain shares of stock.[2] On September 7, 2023, Plaintiff WBC filed a Complaint in this Court against Kirton McConkie and Lloyd, setting

---

[1] ECF No. 45.
[2] *See generally* ECF No. 1.

forth three claims for relief: (1) breach of contract; (2) professional negligence (legal malpractice); and (3) breach of fiduciary duty.[3]

At the core of this case is an April 2017 opinion letter (the "Opinion Letter") that Kirton McConkie and Lloyd drafted to advise a broker about the sale of shares of common stock that WBC owned in Dolat Ventures, Inc. ("DOLV").[4] In its Complaint, Plaintiff WBC alleges that, in the Opinion Letter, Kirton McConkie and Lloyd represented that they had "conducted all required due diligence" and opined that WBC could sell the DOLV stock without violating Securities and Exchange Commission ("SEC") Rule 144, a safe-harbor exemption from SEC registration requirements.[5] WBC alleges that it in turn sold the DOLV stock in reliance on the Opinion Letter.[6]

After WBC sold the stock in reliance on the Opinion Letter, in 2018 the SEC began investigating the transaction.[7] WBC alleges that Kirton McConkie and Lloyd eventually submitted an offer of settlement (the "Offer of Settlement") to the SEC "[i]n or about 2021."[8] According to the Complaint, the Offer of Settlement consented to the SEC's allegations and to certain relief and penalties—without notifying WBC about the allegations.[9] WBC adds that, in connection with the investigation, Kirton

---

[3] *Id.*
[4] *Id.* ¶¶ 11, 14.
[5] *Id.* ¶ 14.
[6] *Id.* ¶ 15.
[7] *Id.* ¶ 17.
[8] *Id.* ¶ 18.
[9] *Id.* ¶¶ 18–19.

McConkie and Lloyd gave the SEC attorney-client privileged materials without notifying WBC or giving WBC a chance to object.[10]

According to the Complaint, the SEC accepted the Offer of Settlement in September 2021 and issued a public cease and desist order (the "Cease and Desist Order"). On the same day the Cease and Desist Order issued, the SEC brought an enforcement action against WBC and others in the United States District Court for the Southern District of New York.[11] *See* Complaint, *SEC v. Thurlow*, No. 1:21-CV-7700 (Sept. 25, 2021), ECF No. 1. According to the Complaint, the SEC's enforcement action against WBC and others alleges that the DOLV stock-share transaction violated the Securities Act.[12]

In response to WBC's Complaint, Kirton McConkie and Lloyd filed a Rule 12(b)(6) motion[13] to dismiss, which this Court denied.[14] On March 27, 2025, Kirton McConkie and Lloyd filed an Answer and Third-Party Demand.[15] The Third-Party Demand named Joseph D. Jordan (the owner of WBC); Roger Leon Fidler (counsel for WBC); Simon Piers Thurlow (law clerk to Fidler); and Richard Oravec (corporate consultant involved in the DOLV transaction) as Third-Party Defendants.[16]

The Third-Party Demand alleges that Jordan, Fidler, Thurlow, and Oravec together provided Kirton McConkie and Lloyd false information and documents,

---

[10] *Id.* ¶ 20.
[11] *Id.* ¶ 23.
[12] *Id.*
[13] ECF No. 11.
[14] ECF No. 24.
[15] ECF No. 30.
[16] *Id.*

3

which Kirton McConkie and Lloyd then relied upon when drafting the Opinion Letter for WBC's sale of shares in DOLV.[17] Kirton McConkie and Lloyd also relied on these documents when they prepared a Representation Letter for WBC, which set out the pertinent facts and information necessary for Kirton McConkie and Lloyd to render the Opinion Letter. Jordan (owner of WBC) signed and returned the Representation Letter.[18] In that Letter, Jordan/WBC "represent[ed] and warrant[ed]" to Kirton McConkie the truthfulness of each material fact related to the transactions at issue and asserted that Kirton McConkie could "rely on the information contained herein." According to the Third-Party Demand, Jordan/WBC[19] made multiple material misrepresentations throughout the Representation Letter, including that DOLV was not a "shell issuer" and that the transaction was "not a part of a plan or scheme to evade the 1993 Act registration requirements."[20]

On April 4, 2017, Lloyd issued the Opinion Letter for WBC's sale of shares in DOLV. The Opinion Letter incorporated by reference the documents that were provided to and reviewed by Kirton McConkie and Lloyd, including the April 3, 2017 Representation Letter. The Opinion Letter stated that Lloyd's opinions were "based solely on representations and warranties made to [Third-Party Plaintiffs] by [WBC/Jordan] with no independent verification . . . ."[21]

---

[17] ECF No. 30 at 13-15 ¶¶ 14-22.
[18] *Id.* at 15 ¶¶ 24-25.
[19] *Id.* The Third-Party Demand also alleges that WBC is the "nominee company" of Jordan and an alter-ego. *Id.* at 16 ¶ 26 n.1.
[20] *Id.* at 16 ¶¶ 26-28.
[21] *Id.* at 17-18 ¶¶ 29-37.

4

Over a year later, in May 2018, the SEC contacted Kirton McConkie and Lloyd about a non-public, fact-finding inquiry it was undertaking regarding certain transactions related to the sale of the DOLV shares. The SEC ultimately served three investigative subpoenas on Third-Party Plaintiffs and a deposition subpoena on Lloyd. Lloyd's deposition was taken on March 5, 2019. He was represented by counsel and, according to the Third-Party Demand, did not reveal any confidences of his former client, WBC, or information protected by the attorney-client privilege during the deposition.[22]

The Third-Party Demand alleges that during the course of the SEC's investigation, Third-Party Plaintiffs learned that they may have been unwittingly duped into providing the Opinion Letters to Fidler's clients, including WBC, based on false, fraudulent, and/or forged information provided by or on behalf of the Third-Party Defendants.[23] Specifically, Kirton McConkie and Lloyd learned that the SEC believed that Jordan, Thurlow, Fidler and/or Oravec, and other alleged co-conspirators, were part of a scheme to illegally offer unregistered securities for sale in violation of numerous provisions of the Securities Act and the Exchange Act.[24]

According to the Third-Party Demand, the SEC informed Third-Party Plaintiffs in September 2020 that they too were accused of violating the Securities Act and the Exchange Act, specifically §§ 5(a) and 5(c) of the Securities Act. On July 26, 2021, Lloyd executed an Offer of Settlement, which was accepted by the SEC and

---

[22] *Id.* at 20 ¶¶ 38-42.
[23] *Id.* at 18-19 ¶¶ 38-43.
[24] *Id.* at 20 ¶ 44.

which then issued a Cease-and-Desist Order. Lloyd agreed to disgorgement of $3,150 in fees, plus interest, and a $40,000 civil penalty. In entering the Offer of Settlement and Cease-and-Desist Order, Third-Party Plaintiffs were not required to, and did not, admit any of the factual allegations the SEC made against WBC or the Third-Party Defendants.[25]

The Third-Party Demand brings one claim against Third-Party Defendants Jordan, Fidler, Thurlow and Oravec for "legal, equitable, or implied indemnity." According to the Demand, "[u]nder the doctrines of legal, equitable, or implied indemnity, a person who has been subjected to liability as a result of the wrongful or tortious conduct of another is entitled to indemnity from the other for any expenditures made in discharging the liability, including recovery of attorney's fees."[26] It accordingly alleges that "if Third-Party Plaintiffs are held liable for WBC's alleged damages arising out of the SEC investigation and SEC Complaint, Third-Party Defendants are obligated to indemnify Third-Party Plaintiffs for all expenditures incurred in connection with same, including attorney's fees."[27]

Third-Party Defendants now bring a motion[28] to dismiss the Third-Party Demand. Third-Party Defendants Fidler, Thurlow, and Oravec seek to dismiss Third-Party Plaintiffs' claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Further, all Third-Party Defendants seek to dismiss Third-Party Plaintiffs'

---

[25] *Id.* at 20 ¶¶ 47-51.
[26] *Id.* at 26 ¶ 76.
[27] *Id.* ¶ 77.
[28] ECF No. 45.

Third-Party Demand for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The Court considers each argument in turn.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits Third-Party Defendants to move to dismiss Third-Party Plaintiffs' Demand for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). Because the Court decides Third-Party Defendants' Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, the Court "'must accept as true the uncontroverted allegations in the [Third-Party Demand] and resolve in favor of [Third-Party Plaintiffs] any factual conflicts posed by the affidavits.'" *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) (citation omitted). Third-Party Plaintiffs have "'the burden to make a *prima facie* showing that personal jurisdiction is proper.'" *Id.* (citation omitted). But that "*prima-facie*-case requirement does not require the [C]ourt to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Further, Rule 8(a)(2) requires that any "pleading that states a claim for relief" contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also* FED. R. CIV. P. 7(a) (defining "[p]leadings" to include "third-party complaint[s]"). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.  ANALYSIS

"As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will address the jurisdictional issues before considering whether a claim was stated by the complaint, although there is no requirement that jurisdictional issues be considered in a particular order." 5B Charles Alan Wright, Arthur R. Miller & Benjamin Spencer, Federal Practice and §

8

1351, at 244-46 (4th ed. 2024). Accordingly, the Court will first consider whether it has personal jurisdiction over Third-Party Defendants Fidler, Thurlow, and Oravec. Finding that there is personal jurisdiction over those defendants, the Court next considers Third-Party Defendants' motion to dismiss for failure to state a claim.

### A.    Rule 12(b)(2) – Personal Jurisdiction

Three of the Third-Party Defendants— Fidler, Thurlow, and Oravec—contend the Court should dismiss the claim alleged against them in the Third-Party Demand because this Court lacks personal jurisdiction over them. The three non-resident Third-Party Defendants reason there is no specific personal jurisdiction over them because they lack minimum contacts with Louisiana.[29] They further assert it would not be fair and reasonable to hale them into court in Louisiana to defend themselves in this lawsuit.[30]

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation and alteration omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction, the plaintiff (or, in this instance, Third-Party Plaintiff) "bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). All allegations in the complaint—except as controverted by opposing

---

[29] ECF No. 45 at 1.
[30] *Id.*

9

affidavits—"must be taken as true, and all conflicts in the facts must be resolved in favor of the [third-party] plaintiffs." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A federal court may exercise personal jurisdiction over a nonresident defendant if the "forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Because Louisiana's long-arm statute, La. Rev. Stat. § 13:3201, *et seq.*, extends to the limits of the Due Process Clause of the Fourteenth Amendment, the two inquiries collapse into the single inquiry whether the exercise of personal jurisdiction comports with due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

Personal jurisdiction can be general or specific. *Carmona*, 924 F.3d at 193. Third-Party Plaintiffs assert only specific jurisdiction.[31] In evaluating whether due process permits the exercise of specific jurisdiction, the Court considers:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* "If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a 'compelling case' that the assertion of jurisdiction is not fair or reasonable." *Id.* In determining reasonableness, a court considers "the burden on the

---

[31] ECF No. 53 at 16 n.8.

defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987), as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

Third-Party Defendants Fidler, Thurlow, and Oravec contend this Court lacks specific personal jurisdiction over them because are not residents of Louisiana, they did not "work or transact business in Louisiana," and they have "[no] contacts with Louisiana whatsoever."[32] In its Complaint, however, Plaintiff WBC relies on its own status as a Louisiana citizen to argue there is personal jurisdiction over Defendants/Third-Party Plaintiffs Kirton McConkie and Lloyd—who are Utah citizens—in Louisiana. Indeed, WBC alleges that "a substantial part of the events or omissions giving rise to the claim[s] occurred in the Eastern District of Louisiana" and asserts claims for breach of contract, professional negligence, and breach of fiduciary duty.[33] Kirton McConkie and Lloyd have not contested this Court's personal jurisdiction over them in Louisiana for their role in the underlying transaction.

WBC is a Louisiana citizen, and its owner, Third-Party Defendant Joseph Jordan, is also a citizen of Louisiana. According to the Third-Party Demand, Fidler and Thurlow acted as counsel to WBC during the relevant transaction, and Oravec also allegedly provided Kirton McConkie and Lloyd with documents underlying their

---

[32] ECF No. 45-1 at 6; *see also* 45-2, 45-3, 45-4 (Declarations of Fidler, Thurlow, and Oravec).
[33] ECF No. 1 ¶¶ 6-8.

Opinion Letter on behalf of WBC to facilitate the transaction.[34] In their Third-Party Demand, Kirton McConkie and Lloyd allege that Fidler, Thurlow, and Oravec each provided them with falsified documents on which they relied when drafting WBC's Opinion Letter in the transaction.[35] The Third-Party Demand accordingly alleges that "any damages WBC has or will sustain in connection with the SEC investigation or the SEC Complaint were due to the fault or negligence of . . . Fidler, Thurlow, and Oravec."[36] In other words, the Third-Party Demand alleges that Fidler, Thurlow, and Oravec were each directly involved in the transaction that gave rise to WBC's Complaint against Kirton McConkie and Lloyd—a transaction WBC alleges "g[ave] rise to [] claim[s] [that] occurred in the Eastern District of Louisiana."[37]

On reply, Fidler, Thurlow, and Oravec admit a connection to Louisiana insofar as they "may have emailed the owner of WBC [Jordan] who lives in this state" to facilitate the transaction.[38] But they argue that WBC's Louisiana citizenship—and WBC's claim that the underlying events occurred in Louisiana—is insufficient to convey personal jurisdiction over them in Louisiana. They assert it is "as if Third-Party Plaintiffs are attempting to appropriate the plaintiff's jurisdiction for themselves."[39]

The Court disagrees. Third-Party Plaintiffs bring a tort indemnity claim against Fidler, Thurlow, and Oravec. Under Louisiana law, "an implied contract of

---

[34] ECF No. 30 at 14-15 ¶¶ 22-24.
[35] *Id.* at 13-18 ¶¶ 14-37;
[36] ECF No. 30 at 25 ¶ 73.
[37] ECF No. 1 at ¶¶ 6-8.
[38] ECF No. 55 at 2.
[39] *Id.* at 3.

indemnity, or tort indemnity . . . arises only when the fault of the person seeking indemnification is solely constructive or derivative, from failure or omission to perform some legal duty, and may only be had against one who, because of his act, has caused such constructive liability to be imposed." *Hamway v. Braud*, 01-2364 (La. App. 1 Cir. 11/8/02); 838 So. 2d 803, 806 (citing *Nassif v. Sunrise Homes, Inc.,* 739 So.2d 183, 185 (La. 1999). In other words, Kirton McConkie and Lloyd claim they are not liable to Louisiana Plaintiff WBC for their role in the transaction because the underlying fault in that transaction instead lies with Fidler, Thurlow, and Oravec. Indeed, Fidler, Thurlow, and Oravec are alleged to have actively participated in the underlying transaction *on behalf of* WBC as tortfeasors.

Fidler, Thurlow, and Oravec thus are not being haled into Louisiana court "based on [their] 'random, fortuitous, or attenuated' contacts" with the state. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citation omitted). Rather, Kirton McConkie and Lloyd's claim of derivative liability on an indemnity theory against Fidler, Thurlow, and Oravec "arises out of or results from" Fidler, Thurlow, and Oravec's allegedly tortious conduct in this specific transaction on behalf of a Louisiana entity (WBC) and its owner, Louisiana Third-Party Defendant Jordan. This is sufficient for personal jurisdiction. *See Carmona*, 924 F.3d at 193; *see also Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) ("When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction . . . .") (citation omitted); *Mack*

13

*Trucks, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1033 (5th Cir. 1975) (finding that under Georgia long-arm statute the district court had personal jurisdiction over third-party indemnity defendant even in separately-filed lawsuit because the long-arm statute embraced "all legal theories of relief growing out of the jurisdiction generating event.").

Fidler, Thurlow, and Oravec also allege that any contacts they had with WBC/Jordan in Louisiana during the transactions at issue are insufficient for personal jurisdiction because their contacts were limited to "[e]mails and phone calls."[40] Third-Party Defendants cite *Sangha v. Navig8 Shipmanagement Private, Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) to reason that merely sending emails to Louisiana is "'legally insufficient to support a finding of specific jurisdiction.'"[41] But Third-Party Defendants misconstrue *Sangha*'s holding. In that case, the court agreed that emails sent from the defendant located "outside the country" to plaintiff's then-supervisor located "in Alabama" about the plaintiff's work in Texas were insufficient to confer personal jurisdiction over the defendants in Texas. *Sangha*, 882 F.3d at 103. The Court found that the defendant's emails merely "happened to affect" the plaintiff while he was in Houston. *Id.* The defendant's emails were not "purposeful[ly]" targeted at Texas; any Texas connection was "'merely fortuitous'" and therefore insufficient for a finding of personal jurisdiction. *Id.* (quoting *Walden*, 571 U.S. at 286).

---

[40] ECF No. 55 at 2.
[41] *Id.*

14

By contrast, in this case, Thurlow emailed Kirton McConkie and Lloyd, cc:ing Fidler, "in relation to obtaining an [O]pinion [L]etter on behalf of our client Western Bankers Capital," a Louisiana citizen.[42] Numerous emails were then exchanged between Kirton McConkie/Lloyd and Thurlow, Fidler, and Oravec on behalf of WBC and regarding the WBC transaction.[43] Many of these emails included Jordan, WBC's owner, a Louisiana citizen.[44] These email exchanges are sufficient to confer personal jurisdiction in Louisiana over Third-Party Defendants. Unlike the defendant in *Sangha*, Thurlow, Fidler, and Oravec's contacts with Louisiana were not "merely fortuitous"—again, they were purposefully operating on behalf of a Louisiana client in a transaction that gave rise to claims against Kirton McConkie and Lloyd (Utah citizens) in Louisiana. *See also Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014) ("Specific jurisdiction 'focuses on the relationship among the defendant, the forum, and the litigation.'") (citation omitted); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492 (5th Cir. 2018) (finding "the defendants reached out to the forum, which led to this litigation, so we have focused on the correct relationship here, *i.e.* the defendants and the forum"). In this case, Third-Party Defendants are adequately connected to the forum and the underlying litigation in Louisiana. Third-Party Plaintiffs have thus established a *prima facie* case for personal jurisdiction.

---

[42] ECF No. 53-1 (Ex. 1).
[43] *Id.*
[44] *Id.*

15

"If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a 'compelling case' that the assertion of jurisdiction is not fair or reasonable." *Carmona*, 924 F.3d at 193. Fidler, Thurlow and Oravec contend the burden on them is large because they would be required to hire counsel in and travel to Louisiana—notwithstanding that Fidler is already enrolled as *pro hac vice* counsel for WBC in Louisiana. They also assert that this dispute involves "non-Louisiana parties, non-Louisiana witnesses and evidence, and non-Louisiana transactions."

The Court disagrees. Although the three Third-Party Defendants are nonresidents in Louisiana, this state's interest in the litigation outweighs that consideration. *See Asahi Metal*, 480 U.S. at 113 (holding the court must consider not only "the burden on the defendant," but also the "interests of the forum State, and the plaintiff's interest in obtaining relief"). As already discussed, the dispute does not involve only "non-Louisiana" parties, witnesses, and evidence—both Plaintiff WBC and Third-Party Defendant Jordan are Louisiana citizens and significant aspects of the transactions at issue took place in Louisiana. WBC chose to file the original Complaint against Kirton McConkie and Lloyd in Louisiana about a transaction that has a sufficient nexus to Louisiana to confer personal jurisdiction over them. Kirton McConkie and Lloyd's indemnity claim is a derivative cause of action that is based on the same underlying transaction. The "'interstate judicial system's interest in obtaining the most efficient resolution of controversies'" thus also weighs towards a finding that the indemnity claim should be decided in Louisiana. *Wilson v. Belin*, 20 F.3d 644, 647 n.3 (5th Cir. 1994) (citation omitted). The Court finds that Fidler,

16

Thurlow, and Oravec have failed to make a "compelling case" that the assertion of personal jurisdiction would be unfair or unreasonable. *See Carmona,* 924 F.3d at 193.

Accordingly, the Court denies the three Third-Party Defendants' motion to dismiss the claim against them for lack of personal jurisdiction.

### B.    Rule 12(b)(6) – Failure to State a Claim

Third-Party Defendants also bring a motion to dismiss Third-Party Plaintiffs' claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). According to Third-Party Defendants, Kirtin McConkie and Lloyd cannot allege a claim for tort indemnity because it is impossible for a defendant that is liable to another—and therefore at fault for some conduct—to shift liability to a third party.

"It has long been held in Louisiana that a party not actually at fault, whose liability results from the faults of others, may recover by way of indemnity from such others." *Bewley Furniture Co. v. Maryland Cas. Co.,* 285 So.2d 216, 219 (La. 1973).[45] "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement." *Nassif,* 739 So.2d at 185 (citation omitted). The parties agree that Kirton McConkie/Lloyd have no contract with Third-Party Defendants, and thus no basis for contractual indemnity.[46] Third-Party Plaintiffs' claim rests instead on a theory of tort indemnity.

Indemnity "is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought

---

[45] "A federal court sitting in diversity applies the substantive law of the forum state, in this case Louisiana." *Wisznia Co. v. Gen. Star Indem. Co.,* 759 F.3d 446, 448 (5th Cir. 2014).

[46] ECF No. 53 at 23 n.9.

17

to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss." *Id.* (citing 42 C.J.S. *Indemnity* at § 32 (1991)). A claim for legal indemnity "arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Id.* (citation omitted); *see also Bewley,* 285 So.2d at 219 ("The cases have referred to this imposed liability variously as technical, constructive, vicarious and derivative."). "Indemnity, unlike contribution, is not dependent upon subrogation to the right of the creditor, but finds its basis in the concept of unjust enrichment, i.e., the party primarily at fault is unjustly enriched when one held liable vicariously or by reason of technical fault discharges the indebtedness." *Mayo v. Benson Chevrolet Co.,* 717 So.2d 1247, 1248 (La. App. 5th Cir.1998) (citation omitted). Accordingly, a party "who is actually negligent or actually at fault cannot recover [legal] indemnity." *Hamway*, 838 So. 2d at 806 (citation omitted).

The Court should dismiss a third-party claim for tort indemnity if "'[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings . . . in the light most favorable to [the party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault.'" *Threlkeld v. Haskins Law Firm,* 922 F.2d 265, 267-68 (5th Cir.1991) (citation omitted). "An action for indemnity will lie so long as the party's fault 'can be characterized as merely technical or constructive,' and where the party 'was exposed to liability and compelled to pay damages . . . on account of the negligent act of' the third-party defendant[.]"

*Martco Ltd. P'ship v. Bruks Inc.,* 430 F. App'x 332, 335 (5th Cir. 2011) (citations omitted).

Third-Party Defendants argue that Kirtin McConkie and Lloyd's indemnity claim fails as a matter of law. According to Third-Party Defendants, if Kirton McConkie/Lloyd are found liable to Plaintiff WBC for any of the claims against them, they are accordingly at some fault for their conduct and are therefore barred as a matter of law from seeking indemnity from a third-party.

The Court disagrees. True, a party "who is actually negligent or actually at fault cannot recover [legal] indemnity." *Hamway,* 838 So.2d at 806. But a defendant may successfully prove a tort indemnity claim against a third-party where it faces liability "by reason of *technical* fault" but not actual fault. *Mayo,* 717 So.2d at 1248 (emphasis added). Accordingly, in *Martco*, the Fifth Circuit rejected a near-identical argument brought by the third-party plaintiffs in their motion to dismiss. *See* 430 F. App'x at 338 (rejecting argument that "if [the defendant/third-party plaintiff] is found liable to [plaintiff] in this case, it will be because of [third-party plaintiff's] actual fault, in which case [third-party plaintiff] will have no basis for asserting a claim for indemnity against [third-party defendant]"). The court explained that it might "ultimately prove to be the case" that the defendant/third-party plaintiff's fault barred its ability to recover on certain claims. *Id.* Nevertheless, the Fifth Circuit reversed the district court's dismissal of the complaint and held that "such a determination turns on factual findings that cannot be made at the Rule 12(b)(6) stage." *Id.* That is because at the motion to dismiss stage, courts are "concerned only

with whether [the third-party plaintiff] has stated in its third-party complaint a plausible basis for an entitlement to legal indemnity." *Id.*

The same reasoning applies here. At the dismissal stage, the Court is only concerned with whether the third-party plaintiff has plausibly alleged a basis for an entitlement to legal indemnity. Third-Party Plaintiffs in this case have satisfied that low bar. In their Third-Party Demand, they deny any wrongdoing and allege that any liability assigned to them for any of the claims would solely result from Third-Party Defendants' wrongdoing. Specifically, Third-Party Defendants purposefully provided them with false information upon which they relied when drafting the Opinion Letter for which they now face potential liability. Whether Kirton McConkie and Lloyd can succeed on its indemnity claim under this theory remains to be seen and will be considered by the Court at a later stage. For now, the Court declines to dismiss its Third-Party Demand for failure to state a claim. *See Thibodeaux v. Red Frog Events, LLC*, 2018 WL 4373753, at *3 (W.D. La. Sept. 13, 2018) (denying a motion to dismiss because "whether [the third-party defendant] is actually liable to [the third-party plaintiff] 'requires factual findings that cannot be made at the Rule 12(b)(6) stage' " (citation omitted)); *Buratt v. Red Frog Events, LLC*, 2017 WL 5147156, at *2-3 (W.D. La. Nov. 6, 2017) (denying a third-party defendant's motion to dismiss after finding that the third-party plaintiff had "sufficiently ple[d] a third party demand" by denying any wrongdoing and alleging that "any liability it may have is only technical

and a result of" the third-party defendant's negligent construction, oversight, and maintenance).[47]

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Third-Party Defendants' Rule 12(b)(2) and Rule 12(b)(6) motion[48] to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Third-Party Plaintiffs' motion[49] to continue Third-Party Defendants' motion to dismiss is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Third-Party Plaintiffs' motion[50] for leave to file a supplemental brief in support of their opposition to Third-Party Defendants' motion to dismiss is **DENIED AS MOOT.**

New Orleans, Louisiana, this 23rd day of March, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[47] On reply, Third-Party Defendants argue for the first time the Court must dismiss the Complaint because there was no "legal duty" between them and the Third-Party Plaintiffs because, *inter alia*, none of the parties had engagement agreements with Third-Party Plaintiffs. The Court declines to consider this argument. *See Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x. 307, 315 (5th Cir. 2008) ("It is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs."). The Court notes that even if it did consider this argument, courts regularly find there is no need for an engagement agreement to find there is an adequate legal duty in a tort indemnity claim between a third-party plaintiff and third-party defendant. As the Fifth Circuit has explained in reversing the district court's dismissal of a complaint: "We do not agree with the district court that indemnity is limited solely to claims involving a contractor-subcontractor or employer-employee-type relationship between the party seeking indemnity and the party actually at fault . . . . [A]n indemnity claim rests 'upon the general obligation to repair the damages caused by one's fault . . . and the moral maxim that no one ought to enrich himself at the expense of another.'" *Martco*, 430 F. App'x at 337 (citation omitted).

[48] ECF No. 45.

[49] ECF No. 54.

[50] ECF No. 60.